[No. S071467. June 21, 1999.]

TIMOTHY FUKUDA, Plaintiff and Appellant, v.
CITY OF ANGELS, Defendant and Appellant.

## COUNSEL

Franscell, Strickland, Roberts & Lawrence, David D. Lawrence, S. Frank Harrell, George J. Franscell and Ann M. Maurer for Plaintiff and Appellant.

Lawrence J. Friedman; Silver, Hadden & Silver, Stephen H. Silver and Susan Silver for Peace Officers' Research Association of California Legal Defense Fund, Santa Ana Police Officers' Association and San Luis Obispo Sheriff's Office Deputy Sheriffs' Association as Amici Curiae on behalf of Plaintiff and Appellant.

Lackie & Dammeier and Michael D. Lackie as Amicus Curiae on behalf of Plaintiff and Appellant.

Curiale Dellaverson Hirschfeld Kelly & Kraemer, McKenna & Cuneo, Liebert, Cassidy & Frierson, Jeffrey Sloan and Jayne Benz Chipman for Defendant and Appellant.

Daniel E. Lungren, Attorney General, and Susan A. Ruff, Deputy Attorney General, as Amicus Curiae on behalf of Defendant and Appellant.

Michael Asimow as Amicus Curiae on behalf of Defendant and Appellant.

Best, Best & Krieger, John E. Brown, Jeffrey V. Dunn and Marco A. Martinez for California School Boards Association, etc., et al. as Amici Curiae on behalf of Defendant and Appellant.

## OPINION

**GEORGE, C. J.**—We granted review to address two important questions of administrative law arising in instances in which a trial court is required to exercise "independent judgment" review of an agency determination. First, in exercising such review, must a trial court afford a "strong presumption" that the administrative findings are correct? Second, does the petitioner seeking a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5 bear the burden of proving that these findings are incorrect?

The Court of Appeal answered both questions in the negative, reasoning that presuming the correctness of administrative findings and placing the burden of proof on the petitioner would be incompatible with independent judgment review. We conclude that the Court of Appeal was in error, and that the judgment of the Court of Appeal must be reversed. As we shall explain, long-established case law demonstrates that neither presuming the correctness of administrative findings, nor placing the burden on the petitioner, is inconsistent with independent judgment review as that term has been understood in this state.

After we accepted review in this matter, we granted the requests of a number of amici curiae to file briefs addressing, among other things, whether this court should continue to apply—or should abrogate—the independent judgment rule. As explained below, in view of the long-standing duration of the judicial precedent establishing and reaffirming independent judgment review, and the legislative history of Code of Civil Procedure section 1094.5, which implicitly recognizes the rule, we conclude that it would be inappropriate to judicially abrogate the independent judgment rule at this point, and that the policy arguments advanced in support of such a change properly should be directed to the Legislature.

I

This matter commenced as a disciplinary proceeding against Timothy Fukuda, a veteran police officer of the City of Angels (City),[1] based upon his conduct during and following the chase and apprehension of a reckless and erratic driver of a vehicle around midnight sometime in mid-August 1992.

The police department's internal affairs unit investigated Fukuda's conduct, and in mid-November 1992, after Fukuda had waived a "pre-disciplinary meeting," Police Chief John Bart advised Fukuda in writing that he was dismissed from the police department. Chief Bart asserted that Fukuda's conduct during the chase—which included driving in the opposite direction of traffic, engaging in a "rolling roadblock"[2] in violation of department policy, and very nearly being rammed by the suspect's automobile—had been unreasonably dangerous, and that Fukuda, in his written report and in his interviews with the department's internal affairs unit, had lied about his conduct.

Pursuant to the City's "Memorandum of Understanding" with the police officers' association, Fukuda exercised his right to "appeal" the termination. The city council designated a hearing officer who was "not . . . from the office of the City Attorney," who had been "licensed [and] . . . admitted to practice in this State for at least 10 years," and who was a "member of the American Arbitration Association." (Mem. of Understanding, art. XIV, § 14.03.) There followed a seven-day transcribed hearing held in accordance with Government Code sections 11507.6 and 11513 (setting out rules for discovery and evidence), at which Fukuda and numerous other witnesses testified and at which voluminous evidence was received. The hearing officer rendered a written recommendation concerning the "appropriate disposition of the case." (See Mem. of Understanding, art. XIV, § 14.04.) The recommendation (i) adopted the nine written findings of Chief Bart, (ii) rejected as unsupported by the evidence Fukuda's assertion that the termination decision was motivated by retaliation against him for having engaged in union activities, and (iii) sustained the termination recommendation.

Two of the findings addressed Fukuda's conduct during the pursuit: first, that he engaged in a pursuit outside the City, in conjunction with allied agencies, without being requested or authorized to do so; and second, that Fukuda engaged in a rolling roadblock in violation of department policy. The remaining findings addressed Fukuda's conduct after the pursuit: that he

---

[1]The City of Angels is comprised of Angels Camp and Altaville.

[2]A rolling roadblock occurs when an officer slows his or her vehicle to a near stop in an effort to block the forward progress of a following vehicle.

misrepresented the facts in his report on the incident and lied to investigators after the incident.

Thereafter, in accordance with the Memorandum of Understanding, the hearing officer's findings were forwarded to the city council. After consideration, the city council followed the recommendation of the hearing officer and dismissed Fukuda.

Fukuda sought a writ of administrative mandamus to challenge the action of the city council. (Code Civ. Proc., § 1094.5; hereafter section 1094.5.) The trial court, observing that Fukuda's "right to continued employment is a fundamental right," stated that *the City* "must therefore establish that the weight of the evidence supports the findings. This means that [the City] has the burden of proof to produce a preponderance of evidence in support of the findings."[3] Discounting the evidence upon which the hearing officer and the city council had relied, the trial court concluded that in most respects the City had "failed to establish" the various findings against Fukuda. The court found that Fukuda had engaged in a prohibited roadblock, but also concluded that the city council abused its discretion by imposing the penalty of termination. At the same time, the trial court also rejected Fukuda's assertion that the proceedings were instituted against him in retaliation for his union activities. As noted, the Court of Appeal affirmed, rejecting the City's assertion that the superior court erred by placing the burden of proof on the City.

## II

Section 1094.5 sets out the procedure for obtaining judicial review of a final administrative determination by writ of mandate. Two subdivisions of section 1094.5 are relevant here. Subdivision (b) provides that "[t]he inquiry in such a case shall extend to the questions whether the [agency] proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

Subdivision (c) of section 1094.5 provides in full: "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the

---

[3]The trial court also stated: "[Fukuda], however, has the burden of proof with respect to the assertion that he was wrongfully discharged because of his union activity since this is in the nature of an affirmative defense."

evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence. In all other cases, abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record."

Section 1094.5 does not, on its face, specify which cases are subject to independent judgment review. Nor does it expressly allocate the burden of proof or articulate any presumption concerning the correctness of administrative findings in cases in which a trial court exercises independent judgment review. As explained below, however, each of those issues was squarely resolved by case law that preceded the enactment of section 1094.5 in 1945, and each has been reaffirmed repeatedly by subsequent case law that has governed the application of section 1094.5 for the past half century.

## A

In the mid-1930's this court held that the determinations of state administrative agencies are not judicially reviewable by writ of certiorari or prohibition (*Standard Oil Co.* v. *State Board of Equal.* (1936) 6 Cal.2d 557 [59 P.2d 119]; *Whitten* v. *California State Board, Etc.* (1937) 8 Cal.2d 444 [65 P.2d 1296, 115 A.L.R. 1]), but instead are reviewable by writ of mandamus (often denominated writ of mandate; see Code Civ. Proc., § 1084). (*Drummey* v. *State Bd. of Funeral Directors* (1939) 13 Cal.2d 75 [87 P.2d 848] (*Drummey*).) The issues presented by this case have their origin in the *Drummey* decision.

In *Drummey, supra,* 13 Cal.2d 75, a statewide administrative board, after a hearing, suspended the petitioner's embalming license for one year. Upon the petitioner's request, the trial court issued first an alternative writ and then a peremptory writ of mandate commanding the board to dismiss the proceedings and restore the petitioner's license. On review of the appeal filed by the administrative board, we affirmed. We first explained that review by writ of mandate is the appropriate mode of review in such matters. (*Id.* at p. 84.) We then addressed "the question as to what weight the courts should give to the findings of the board—or, stated another way, are the findings of the board, if based on substantial although conflicting evidence, binding on the courts in the *mandamus* proceeding, as they would be in a *certiorari* proceeding or on an appeal?" (*Ibid.,* italics in original.)

We concluded that when a court reviews an administrative determination such as the one at issue, suspending a professional license, the court must "exercise its independent judgment on the facts, as well as on the law . . . ." (*Drummey, supra,* 13 Cal.2d at p. 84.) We also defined the extent of

"independent judgment" review, explaining that such review "does not mean that the preliminary work performed by the administrative board in sifting the evidence and in making its findings is wasted effort. . . . [I]n weighing the evidence the courts can and should be assisted by the findings of the board. *The findings of the board come before the court with a strong presumption of their correctness, and the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence.*" (*Id.* at p. 85, italics added.)

Our opinion in *Drummey* immediately thereafter characterized the above quoted allocation of the burden of proof and presumption of correctness as "sound" "limitations on the rule that the court must exercise its independent judgment." (*Drummey, supra,* 13 Cal.2d at p. 86.) We reiterated and explained: "The findings of a board where formal hearings are held should and do come before the courts with a strong presumption in their favor based primarily on the [rebuttable] presumption contained in section 1963, subsection 15, of the Code of Civil Procedure [currently Evidence Code section 664] 'That official duty has been regularly performed.' Obviously, considerable weight should be given to the findings of experienced administrative bodies made after a full and formal hearing, especially in cases involving technical and scientific evidence." (*Ibid.*)

Applying these principles to the matter then before us in *Drummey,* we reviewed the superior court's judgment "ordering the issuance of a peremptory writ commanding the board to reinstate" the petitioner's license. (*Drummey, supra,* 13 Cal.2d at p. 86.) We observed that findings by the trial court had been waived, and that "[i]t must be conclusively presumed on this appeal that *the trial court weighed the evidence giving due weight to the presumption in favor of the board's findings, but nevertheless, exercising its independent judgment, found against the board.*" (*Ibid.,* italics added.) We concluded that the trial court's judgment "must be affirmed" because it was, in turn, supported by substantial evidence in the record. (*Ibid.*) We restated this analysis at the close of the opinion: "Under such circumstances, the trial court having power to weigh the evidence, we must conclusively presume that the trial court *performed its duty, gave full weight to the presumption of validity of the board's findings, but nevertheless found against the board on this count.* The determination of the trial court on conflicting evidence on the facts is binding on this court on this appeal." (*Drummey, supra,* 13 Cal.2d at p. 88, italics added.)

Three years after *Drummey,* we decided *Laisne v. Cal. St. Bd. of Optometry* (1942) 19 Cal.2d 831 [123 P.2d 457] (*Laisne*), in which we stated that on mandamus review in the trial court, a petitioner challenging a statewide

administrative board's revocation of his certificate of registration to practice optometry was entitled to independent judgment review, which we characterized as a "trial de novo." (*Id.* at p. 845.)[4] A few months thereafter we clarified that the "substantial evidence" standard of review, and not independent judgment review, was the proper standard for judicial review of the determination of local, as contrasted with statewide, agencies. (*Walker* v. *City of San Gabriel* (1942) 20 Cal.2d 879 [129 P.2d 349, 142 A.L.R. 1383] (*Walker*).)[5]

At the General Election in 1942, a proposed constitutional amendment (Proposition 16), drafted and supported by individuals critical of this court's decisions in *Drummey* and *Laisne*, was placed before the voters. That proposition would have authorized the Legislature or any chartered city (or city and county) to enact legislation providing that the determinations of administrative agencies would be subject to judicial review under only the "substantial evidence" standard of review instead of the broader "independent judgment" review provided for in this court's recently decided precedents. (See Ballot Pamp., Proposed Amend. to Cal. Const., with arguments to voters, Gen. Elec. (Nov. 3, 1942) p. 23 [Appen.]; see also *id.* at p. 20 et seq.) The proposition was overwhelmingly rejected by the electorate.

Thereafter, in *Dare* v. *Bd. of Medical Examiners* (1943) 21 Cal.2d 790 [136 P.2d 304] (*Dare*), we again turned our attention to the independent judgment standard of review, affirming a statewide board's revocation of the petitioner's license and, in the process, clarifying aspects of both *Drummey, supra,* 13 Cal.2d 75, and *Laisne, supra,* 19 Cal.2d 831. First, we quoted our statement in *Drummey* that " 'the findings of the board come before the court with a strong presumption of their correctness' " (*Dare, supra,* 21 Cal.2d at p. 798), and explained: "If there is no requirement for formal findings and none are made, findings in favor of the prevailing party are implied from the determination of the board." (*Id.* at pp. 798-799.) Second, regarding *Laisne*'s reference to "trial de novo" in the trial court (*id.* at pp. 793-794), we clarified

---

[4]A vigorous dissent by Chief Justice Gibson, joined by Justices Edmonds and Traynor, asserted that this standard of review was unwarranted and unwise, and that review should be by certiorari, not mandate. (19 Cal.2d at pp. 848-869.)

[5]A few years thereafter, we further clarified that the "substantial evidence" standard of review, and not independent judgment review, was the proper standard for judicial review of the determination of agencies authorized by the California Constitution to exercise "powers of a judicial nature." (*Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 131-132 [173 P.2d 545].)

As noted below, more than three decades after *Walker*, we overruled *Walker* and other decisions and extended the applicability of independent judgment review to the final determinations of local agencies as well as statewide agencies. (*Strumsky* v. *San Diego County Employees Retirement Association* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29] (*Strumsky*).)

that a petitioner seeking a writ of mandate to overturn an administrative determination generally is bound by the record made at the administrative hearing, and may present additional evidence to the trial court only if such evidence could not "in the exercise of reasonable diligence, . . . have been introduced before the board." (*Id.* at p. 799.)[6]

A few months after *Dare,* we decided *Sipper* v. *Urban* (1943) 22 Cal.2d 138 [137 P.2d 425] (*Sipper*). In that matter the petitioner unsuccessfully sought a writ of mandate in the trial court to compel an administrative agency to vacate an order suspending his real estate license. The trial court, exercising independent judgment, denied the writ. We affirmed, commenting that "[i]n his application for a writ it was incumbent upon [the petitioner] to state a prima facie case entitling him to relief." (*Id.* at p. 141.) In a concurring opinion, Justice Schauer described the state of the law as follows: "The procedure as now declared gives the reviewing court the power and duty of exercising an independent judgment as to both facts and law, but contemplates that the record of the administrative board shall come before the court endowed with a strong presumption in favor of its regularity and propriety in every respect and that the burden shall rest upon the petitioner to support his challenge affirmatively, competently, and convincingly. In other words, rarely, if ever, will a board determination be disturbed unless the petitioner is able to show a jurisdictional excess, a serious error of law, or an abuse of discretion on the facts." (*Id.* at p. 144 (conc. opn. of Schauer, J.).)[7]

B

Shortly thereafter, echoing suggestions in Justice Schauer's concurring opinion in *Sipper, supra,* 22 Cal.2d at page 146 et seq., the Legislature

[6]*Dare, supra,* 21 Cal.2d 790, like *Laisne, supra,* 19 Cal.2d 831, was a four-to-three decision. Again, three dissenters, this time led by Justice Traynor, asserted that review should be by certiorari (and the substantial evidence standard of review), rather than mandate (and the independent judgment standard of review). (21 Cal.2d at p. 803 et seq.)

[7]Justice Schauer, who had only recently joined the court, also addressed the views of the three dissenting justices who would have recognized a right to judicial review of final administrative determinations by certiorari (and the substantial evidence standard of review), rather than mandate (and the independent judgment standard of review). Justice Schauer explained that although he agreed that certiorari rather than mandate appeared to be the most appropriate mode of review "from the academic standpoint" (22 Cal.2d at p. 146 (conc. opn. of Schauer, J.), he would adhere to the majority view in part out of respect for stare decisis.

Further, addressing the electorate's rejection of Proposition 16 in 1942—which, as noted *ante,* at page 813, would have permitted the Legislature or any chartered city (or city and county) to subject the determinations of administrative agencies to only substantial evidence review instead of the broader independent judgment review afforded by this court's precedents—Justice Schauer observed that "[b]y this overwhelming vote the people expressed their preference for the liberal policy followed by the court as opposed to the narrower one proposed to them. The State of California must therefore be recognized as committed to the broader policy encompassed by the mandamus procedure." (*Sipper, supra,* 22 Cal.2d 138, 153 (conc. opn. of Schauer, J.).)

enacted and the Governor signed legislation directing the Judicial Council to "make a thorough study of the subject . . . of review of decisions of administrative boards, commissions and officers[,] . . . formulate a comprehensive and detailed plan," and report its recommendations to the Legislature along with "drafts of such legislative measures as may be calculated to carry out and effectuate the plan." (Stats. 1943, ch. 991, § 2, p. 2904.) The Judicial Council of California did so in its Tenth Biennial Report (1944) (Report). (See generally, Kleps, *California's Approach to the Improvement of Administrative Procedure* (1944) 32 Cal.L.Rev. 416.) The Report recommended, and the Legislature adopted with only minor changes, three major pieces of legislation: a statewide Department of Administrative Procedure (Rep., *supra*, at p. 10 et seq.; *id.*, appen. A, p. 31 et seq.; see Gov. Code § 11370.2 et seq.); the Administrative Procedure Act (Rep., *supra*, at p. 12 et seq.; *id.*, appen. A, p. 33 et seq.; see Gov. Code, § 11370); and the statute that we consider in the case now before us, section 1094.5 (Rep., *supra*, at p. 26 et seq.; *id.*, appen. A, p. 45 et seq.).

Regarding section 1094.5, the Judicial Council's 1944 Report noted that the proposed legislation did "not depart from the procedural pattern laid down by recent court decisions" (Rep., *supra*, at p. 26), but instead made provision "for the cases in which the court has the power to exercise an independent judgment on the evidence and also for cases in which the court merely examines the record to ascertain whether the decision is supported by substantial evidence." (*Id.* at p. 27.) Regarding the limitations recognized by *Drummey* and its progeny, upon the trial court's exercise of independent judgment, the Report stated: "[I]n [exercising an independent judgment on the facts and making their own findings], the courts must give effect to a presumption in favor of the agency's action . . . ." (Rep., *supra*, appen. B, pt. 3, at p. 141.) The Report asserted that "the exact effect of this presumption is impossible to estimate" (*ibid.*), but observed that the presumption arose from *Drummey, Dare*, and *Sipper*, and that it is based "upon the provisions of Code Civ. Proc., Sec. 1963[, subdivision] (15) [currently set out at Evidence Code section 664, presuming] that official duties have been regularly performed." (Rep., *supra*, appen. B, pt. 3, at p. 141, fn. 57.) The Report concluded on this point that the presumption in favor of agency findings *"has the effect of an admonition to the court and of casting the burden of proof upon the person seeking to overthrow the administrative action." (Ibid.*, italics added.)

As indicated, the Legislature adopted and the Governor signed into law section 1094.5 as proposed by the Judicial Council in its 1944 Report. (Stats. 1945, ch. 868, § 1, p. 1636.) Although the statute has been amended on many occasions since then, subdivisions (b) and (c), as relevant here, have remained substantively unchanged.

## C

■ From this history it is apparent that section 1094.5 "is a codification of the procedure devised for reviewing the adjudications of . . . administrative agencies" in the series of cases outlined above in part II.A, and that "the scope of review under the . . . statute is the same as that specified in those cases." (*Temescal Water Co.* v. *Dept. Public Works* (1955) 44 Cal.2d 90, 105 [280 P.2d 1].) As observed in *Hohreiter* v. *Garrison* (1947) 81 Cal.App.2d 384 [184 P.2d 323], the Judicial Council's 1944 Report "is a most valuable aid in ascertaining the meaning of the statute. . . . [T]he council drafted this language at the request of the Legislature, and in this respect was a special legislative committee. As part of its special report containing the proposed legislation [the Judicial Council] told the Legislature what it intended to provide by the language used. *In the absence of compelling language in the statute to the contrary, it will be assumed that the Legislature adopted the proposed legislation with the intent and meaning expressed by the council in its report.*" (81 Cal.App.2d at p. 397, italics added; accord, *Anton* v. *San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 817 [140 Cal.Rptr. 442, 567 P.2d 1162] (*Anton*).)

Consistent with these observations, in the decades following the adoption of section 1094.5, a number of cases have quoted and acknowledged the limitations (recognized in the Judicial Council's Report) placed by *Drummey* and its progeny upon independent judgment review. In *Bixby* v. *Pierno* (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242] (*Bixby*), the leading modern case discussing and explaining the independent judgment test,[8] we quoted with approval *Drummey*'s statement that in applying " 'independent

___

[8]*Bixby* reaffirmed and clarified our case law, holding that when a trial court reviews a final administrative decision that substantially affects a fundamental vested right, the court "not only examines the administrative record for errors of law but also exercises its independent judgment upon the evidence . . . ." (*Bixby, supra,* 4 Cal.3d at p. 143.) By contrast, we explained, the case law stands for the proposition that "[i]f the administrative decision does not involve, or substantially affect, any fundamental vested right, the trial court must still review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law, but the trial court need not look beyond that whole record of the administrative proceedings." (*Id.* at p. 144, fn. omitted.)

In response to arguments of a dissenting justice that the independent judgment test should be abandoned in favor of the substantial evidence test, the majority asserted that "[i]n view of [the] judicial history [of section 1094.5], the court would now assert a doubtful prerogative if it were to rule that no cases at all require an independent judgment review and that the Legislature created an empty category in section 1094.5." (4 Cal.3d at p. 140.) The court in *Bixby* concluded that application of the independent judgment standard does not impose on trial courts a burden that is "significantly more" than that imposed by substantial evidence review (*id.* at p. 143, fn. 10), and that independent judgment review is necessary to protect individual liberty: "At a time in this technocratic society when the individual faces ever

judgment,'" a trial court must accord a "'strong presumption of . . . correctness'" to administrative findings, and that the "burden rests" upon the complaining party to show that the administrative "'decision is contrary to the weight of the evidence.'" (*Id.* at p. 139; see also *Campbell* v. *Board of Dental Examiners* (1971) 17 Cal.App.3d 872, 875-876 [95 Cal.Rptr. 351] [a strong presumption supports the correctness of the findings of an administrative agency, and the burden of proof rests upon the petitioner to establish administrative error]; *Chamberlain* v. *Ventura County Civil Service Com.* (1977) 69 Cal.App.3d 362, 368 [138 Cal.Rptr. 155] [quoting *Drummey's* "strong presumption of . . . correctness" and burden of proof qualifications on independent judgment review]; *San Dieguito Union High School Dist.* v. *Commission on Professional Competence* (1982) 135 Cal.App.3d 278, 288 [185 Cal.Rptr. 203] [commission's "factual finding is entitled to substantial weight even in an 'independent judgment' hearing before the superior court"].)[9]

## III

Despite this history, the Court of Appeal below concluded that *Drummey* and its progeny should not control, and that when exercising independent judgment a trial court may not afford the agency's findings any presumption of correctness, and must place the burden of proof on the entity supporting the administrative agency's decision.

■ We reject the Court of Appeal's conclusion, under which agency determinations and findings would be entitled to no weight at all, and affirm the rule first articulated in *Drummey,* reaffirmed in *Dare* and *Sipper,* implicitly codified by the Legislature in section 1094.5, and thereafter reaffirmed by numerous opinions including *Bixby*: In exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence.

---

greater danger from the dominance of government and other institutions wielding governmental power, we hesitate to strip him of a recognized protection against the overreaching of the state. The loss of judicial review of a ruling of an administrative agency that abrogates a fundamental vested right would mark a sorry retreat from bulwarks laboriously built. Such an elimination would not only overrule decisions long held in California, but destroy a bed-rock procedural protection against the exertion of arbitrary power." (*Id.* at p. 151.)

[9]Three years after *Bixby, supra,* 4 Cal.3d 130, our decision in *Strumsky, supra,* 11 Cal.3d 28, extended the independent judgment standard of review to the final determinations of local administrative boards, thereby overturning a number of cases (including *Walker, supra,* 20 Cal.2d 879) holding that the decisions of such boards are subject only to substantial evidence review. Thereafter, in *Anton, supra,* 19 Cal.3d 802, this court in turn extended *Strumsky* to the determinations of nongovernmental agencies subject to review under section 1094.5.

As explained below, opposing arguments advanced by Fukuda and accepted by the Court of Appeal are unpersuasive.

The Court of Appeal held, and Fukuda here asserts, that it would be confusing and inconsistent for a superior court to presume the correctness of administrative findings, and still exercise independent judgment review. Some justices and scholars who champion the more deferential substantial evidence standard of review have unsuccessfully advanced the same assertion in the course of arguing *against* the retention of independent judgment review.[10] But the assertion of incompatibility is no more persuasive when it comes, as in this case, from the *advocates of* independent judgment review. As explained by the Judicial Council's 1944 Report, the presumption "has the effect of an admonition to the court." (Rep., *supra*, appen. B, pt. 3, at p. 141, fn. 57.) In other words, the presumption provides the trial court with a starting point for review—but it is only a presumption, and may be overcome. Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings. This approach to the trial court's exercise of independent judgment long has been understood, and was, in fact, illustrated by *Drummey* itself, in which we twice observed that the trial court "weighed the evidence giving due weight to the presumption in favor

---

[10]Justice Burke's concurring opinion in *Bixby, supra,* 4 Cal.3d 130, 151, echoing earlier scholarly criticism of the independent judgment test (e.g., Kleps, *Certiorarified Mandamus Review: The Courts and California Administrative Decisions—1949-1959* (1960) 12 Stan.L.Rev. 554; Netterville, *Judicial Review: The "Independent Judgment" Anomaly* (1956) 44 Cal.L.Rev. 262; McGovney, *Administrative Decisions and Court Review Thereof in California* (1941) 29 Cal.L.Rev. 110), asserted that independent judgment review provided insufficient deference to and respect for administrative determinations, and argued for abandonment in favor of substantial evidence review. In the process, Justice Burke, like the cited scholarly criticism, observed that the "presumption of correctness" and burden of proof articulated in *Drummey, supra,* 13 Cal.2d 75, and *Dare, supra,* 21 Cal.2d 790, "diminish the independence of the trial courts' review"—a result that Justice Burke and the commentators obviously approved as affording respect for the "expertise and discretion which, presumably, underlies any such [administrative] decision." (*Bixby, supra,* 4 Cal.3d at p. 154 (conc. opn. of Burke, J.).) As part of his general argument against independent judgment review, however, Justice Burke went on to assert—without analysis—that "commentators assume that the so-called 'presumption' will be ignored by the trial courts, since it is totally inconsistent with the concept of an independent judgment review. See, e.g., Kleps, *supra,* . . . at page 577; Netterville, *supra,* . . . at pages 279-280; McGovney, *supra,* . . . at pages 129-130." (*Bixby, supra,* 4 Cal.3d at p. 154, fn. 12; accord, *Anton, supra,* 19 Cal.3d 802, 831, fn. 1 (dis. opn. of Clark, J.) ["Such a presumption, while perhaps desirable, appears inconsistent with the concept of independent judgment."]; Asimow, *The Scope of Judicial Review of Decisions of California Administrative Agencies* (1995) 42 UCLA L.Rev. 1157, 1168, fn. 35 ["[I]t is difficult to reconcile [the] presumption with the independent judgment test. In practice, it appears that the . . . presumption is ignored."].) As explained in the text above, we do not find either the presumption or the allocation of burden of proof to be incompatible with the exercise of independent judgment.

of the board's findings, but nevertheless, exercising its independent judgment, found against the board." (13 Cal.2d at p. 86; see also *id.* at p. 88.) As shown by *Drummey* and its progeny, there is no inconsistency in a rule requiring that a trial court begin its review with a presumption of the correctness of administrative findings, and then, after affording the respect due to these findings, exercise independent judgment in making its own findings. (Accord, *Yamaha Corp. of America* v. *State Bd. of Equalization* (1998) 19 Cal.4th 1 [78 Cal.Rptr.2d 1, 960 P.2d 1031] [when interpreting a statute, a court must afford deference to the agency's interpretation, but ultimately exercise its own independent judgment]; cf. *People* v. *Lang* (1989) 49 Cal.3d 991, 1045 [264 Cal.Rptr. 386, 782 P.2d 627].)

The Legislature's enactment of section 1094.5—in light of the Judicial Council's 1944 Report, and *Drummey* and its progeny—indicates legislative acceptance of the limitations placed by *Drummey* and later cases upon independent judgment review. The Legislature's subsequent failure to amend section 1094.5, subdivision (c), to remove those limitations further suggests legislative acceptance of the limitations. (See *Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 608-609 [257 Cal.Rptr. 320, 770 P.2d 732].) Indeed, in the course of making numerous amendments to the Administrative Procedure Act (see Stats. 1995, ch. 938), the Legislature recently has embraced similar limitations. Government Code section 11425.50, subdivision (b), directs trial courts to give "great weight" to credibility determinations of state agency hearing officers, even when the trial court conducts independent judgment review under section 1094.5.[11] Obviously, the Legislature sees no inconsistency in having the trial court first afford "great weight" to credibility determinations, and then exercise independent judgment in making its own findings.

The Court of Appeal also held, and Fukuda here contends, that *Drummey, supra,* 13 Cal.2d 75, does not impose a burden of *proof* (defined in Evid. Code, § 115) on the party contesting an administrative action, but instead imposes, at most, a burden of *production* (defined in Evid. Code, § 110) on that party. We find no support for this view.

Evidence Code section 500 states that "[e]xcept as . . . provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting."

---

[11]This subdivision provides in relevant part: "If the factual basis for the decision includes a determination based substantially on the credibility of a witness, the statement shall identify any specific evidence of the observed demeanor, manner, or attitude of the witness that supports the determination, and on judicial review the court shall give great weight to the determination to the extent the determination identifies the observed demeanor, manner, or attitude of the witness that supports it." (Gov. Code, § 11425.50, subd. (b).)

This provision applies to writ proceedings under section 1094. (Evid. Code, § 300 ["Except as otherwise provided by statute, [the] code applies in every action before the . . . superior court . . . ."].) Contrary to the Court of Appeal's unsupported statement that "section 1094.5 provides otherwise," that statute does so neither expressly nor implicitly. Indeed, as noted above, the history of the Judicial Council's 1944 Report demonstrates that the Legislature intended that section 1094.5 embrace Evidence Code section 500's traditional allocation of the burden of proof.[12]

But, even without reference to Evidence Code section 500, both the allocation of burden of proof and the nature of that burden articulated in *Drummey* are clear on the face of our opinion in that case. Contrary to Fukuda's suggestion that the burden of proof did not rest with him, and that "the 'burden of proof' discussed in *Drummey* appears to go [only] to the burden on the petitioner to produce evidence in support of his claims," the language of the court in *Drummey*—"*the burden rests on the complaining party to convince the court that the board's decision is contrary to the weight of the evidence*" (*Drummey, supra,* 13 Cal.2d at p. 85, italics added)—plainly casts upon "the complaining party" (and not the administrative agency) a burden of proof or persuasion, and not a mere burden of production or of coming forward with evidence.

In support of its contrary holding, the Court of Appeal stated, and Fukuda now contends, that the statutory presumption that "official duty has been regularly performed" (Evid. Code, § 664)—which, as noted above, was cited in *Drummey* as an important factor, along with administrative expertise, in explaining why administrative findings are presumed to be correct (13 Cal.2d at p. 86)—"'goes only to the burden of *producing* evidence.'" (Quoting *Kleist* v. *City of Glendale* (1976) 56 Cal.App.3d 770, 777 [128 Cal.Rptr. 781] (*Kleist*), italics added.) Hence, it is argued, any burden recognized by *Drummey* should be seen as one of mere production, and not persuasion. The Court of Appeal's premise is questionable: Evidence Code section 664 long has been classified by the Legislature as a presumption affecting the burden of proof (defined in Evid. Code, §§ 605, 660 et seq. [listing presumptions affecting burden of proof]), rather than one affecting

---

[12]In support of its contrary view, the Court of Appeal relied upon *Webster* v. *Trustees of Cal. State University* (1993) 19 Cal.App.4th 1456, 1466 [24 Cal.Rptr.2d 150], in which the Court of Appeal remanded the matter to the trial court with directions to exercise independent judgment and to place the burden of proof upon the party supporting the administrative determination. As Fukuda concedes, *Webster* is inapposite and distinguishable. The Court of Appeal's remand directions in *Webster* constituted a case-specific remedy to correct a burden-allocation error made at the administrative level, and the case does not purport to stand for the proposition that, as a general matter, the burden of proof rests with the party seeking to support the administrative determination.

the burden of producing evidence (defined in Evid. Code, §§ 603, 630 et seq. [listing presumptions affecting burden of producing evidence].) In any event, regardless whether the section 664 presumption properly may be characterized, as implied by the opinion of the Court of Appeal and asserted here by Fukuda, as "fall[ing] from the case" if and when the petitioner presents an adequate record on review,[13] the "strong presumption" of the correctness of administrative findings that we articulated in *Drummey* is separate and different in nature, and based upon additional considerations—including our observation that such findings often are the product of expertise. Indeed, it is clear from *Drummey* that we did not contemplate that the presumption would "drop out" once the petitioner met his or her burden of production: As noted above, our opinion spoke of the trial court's obligation to apply the presumption even though it was clear that the burden of production had been satisfied. (*Drummey, supra*, 13 Cal.2d at pp. 86, 88.)[14]

Other objections noted by the Court of Appeal and raised here by Fukuda may be disposed of quickly.

Fukuda suggests that because section 1094.5, as adopted (and as it exists today), does not expressly codify the presumption of correctness set out in *Drummey*, it should be inferred that the Legislature did not intend to adopt that rule. The legislative history—including the Judicial Council's 1944 Report, discussed *ante*, in part II.B, and the Legislature's failure to amend the statute to avoid the limitations set out in *Drummey* and its progeny— demonstrates otherwise.

Fukuda and amicus curiae on his behalf assert in conclusory fashion that the limitations on independent judgment review, articulated in *Drummey* and its progeny, should be ignored, because they allegedly constituted dictum when first set out in *Drummey*. Our opinion in *Drummey* affirmed the issuance of a peremptory writ of mandate. We could not have done so without deciding whether the trial court had proceeded in a manner that

---

[13]The Court of Appeal relied upon the following statement in *Kleist, supra*, 56 Cal.App.3d at page 777: "The presumption of performance of official duty, contained in Evidence Code section 664, goes only to the burden of producing evidence . . . ." As the City observes, however, the Evidence Code itself, and other decisions construing the code, are to the contrary. (Evid. Code, § 660 et seq.; *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 143 [7 Cal.Rptr.2d 818] ["The presumption in Evidence Code section 664 affects the burden of proof."].)

[14]To satisfy its burden of production at the *administrative hearing*, the public agency must produce evidence of misconduct by the employee. Unless it does so, the employee has no burden to produce evidence that no misconduct occurred. To satisfy his or her burden of production at the *administrative mandamus hearing* under section 1094.5, the employee need only produce a complete record of the administrative hearing—and this record will, in any event, be prepared by the agency. (See Code Civ. Proc., § 1094.6, subd. (c).)

respected and took into account the presumption discussed in our opinion. As noted above, we expressly found that the trial court properly did so proceed, and exercised its independent judgment. The challenged aspect of *Drummey* was not dictum. Even if this were not so, the subsequent adoption of the challenged presumption and burden allocation by *Dare* and *Sipper*, their acceptance by the Legislature, and the subsequent reaffirmation of the challenged presumption and burden allocation by *Bixby* more than adequately establish the bona fides of the challenged presumption and burden allocation today.

Fukuda and amicus curiae on his behalf assert that the existence of the "presumption of correctness" has not been accepted and that the presumption has been "ignored" in practice. We find no support in the record for this assertion. Our opinion herein will reaffirm for the future that the presumption continues to exist.

Fukuda suggests that constitutional considerations preclude any limitation (such as the challenged presumption, or the challenged allocation of the burden of proof) on a trial court's exercise of independent judgment. There was no authority for this proposition when *Drummey* was decided, and there is none now. Indeed, the more recent decisions suggest that the independent judgment test itself is not constitutionally compelled, even in cases substantially affecting fundamental vested rights, when, as here, the underlying administrative procedure includes ample safeguards designed to ensure fairness. (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1979) 24 Cal.3d 335, 346 [156 Cal.Rptr. 1, 595 P.2d 579] (*Tex-Cal*).)[15]

Finally, Fukuda asserts that the judicial "trend" is to expand the scope of writ of mandate review by the trial court, and not to "confer more power" on administrative agencies. Our task is to construe the statute, not to discern trends. In any event, both *Tex-Cal, supra,* 24 Cal.3d 335, and recently enacted Government Code section 11425.50, subdivision (b) (discussed and quoted *ante*, at p. 819), refute the suggested existence of such a judicial or legislative "trend."

---

[15]The reasoning of the plurality opinion in *Tex-Cal, supra,* 24 Cal.3d 335, casts doubt on the suggestion in *Drummey, supra,* 13 Cal.2d at pages 84-85, that the independent judgment standard of judicial review is compelled by the due process clauses of the state and federal Constitutions, and the suggestion in *Laisne, supra,* 19 Cal.2d at pages 834-845, that the independent judgment standard of review, and a trial de novo, are required by separation of powers considerations. Fukuda asserts that "recent decisions" by the United States Supreme Court have "affirmed" that independent judgment review is required by the due process clause, but he cites no authority for that proposition and we are aware of none.

IV

The City, joined by amici curiae,[16] urges this court to reconsider and abandon *Drummey*'s "independent judgment" standard of review and the case law that has developed to guide courts in administering and implementing that standard. They suggest that the independent judgment test is not constitutionally compelled, and that its use is not generally required in any other jurisdiction, state or federal. They argue, among other things, that (i) our case law is illogical in requiring independent judgment review of fundamental vested rights determined by local and many statewide agencies, but permitting substantial evidence review of the decisions of constitutional agencies; (ii) our case law creates confusion as to what sorts of interests are "fundamental" and "vested" and hence trigger independent judgment review; (iii) use of the independent judgment standard of review imposes increased and unnecessary burdens on our congested trial courts; (iv) use of independent judgment review frequently calls upon trial court judges, as generalists, to substitute their judgment for the more qualified judgment of expert administrators, and promotes disparate results when similar cases from the same agency are heard by different trial court judges; and (v) use of the independent judgment standard of review is not necessary in order to safeguard individual liberties.

We considered and rejected most of these arguments almost three decades ago, in *Bixby, supra,* 4 Cal.3d 130. As we have seen, the independent judgment standard of review was first articulated in decisions issued in the 1930's and early 1940's; in 1942, the voters of this state rejected a proposed constitutional amendment that would have modified those decisions; and in 1945, the Legislature, relying upon a comprehensive report that carefully reviewed the governing cases, essentially codified the independent judgment standard of review through its enactment of section 1094.5. For more than half a century, California courts have applied that standard of review, in accordance with the provisions of section 1094.5. Under these circumstances, we believe that those who advocate abandonment of the independent judgment standard of review on the basis of policy appropriately should

---

[16]Briefs proposing that we abandon independent judgment review have been filed by UCLA Law School Professor Michael Asimow and the California School Boards Association (joined by 84 California cities). The Attorney General has filed a brief in which he "agrees with Professor Asimow . . . that it is time for this Court to reexamine the scope of review of administrative mandamus proceedings." Briefs urging us to retain independent judgment review have been filed by Lackie & Dammeier LLP (a law firm that represents public employee unions, associations, and related groups), and the Peace Officers' Research Association of California Legal Defense Fund et al.

direct their concerns and arguments for revision to the Legislature, rather than to this court.[17]

## V

■ Even when, as here, the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test. (*Drummey, supra,* 13 Cal.2d at p. 86; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72-75 [64 Cal.Rptr. 785, 435 P.2d 553].) ■ In the present case, however, we cannot properly review the trial court's findings and decision for substantial evidence, because that court's findings are themselves infected by fundamental error: The trial court erred by placing the burden of proof on the City, and by failing to accord a presumption of correctness to the administrative findings.

Fukuda asserts that we nevertheless may affirm the judgment because, he claims, the trial court's misallocation of the burden of proof and apparent failure to presume the correctness of the administrative findings did not affect its decision. The record, however, does not support this contention, and instead demonstrates that the trial court relied repeatedly upon the City's failure to meet its burden of proof. Indeed, the trial court stressed that, with regard to the question whether Fukuda's involvement in the pursuit was "unreasonably dangerous," the evidence was "evenly balanced, and the party having the burden of proof loses." As Fukuda concedes, "had [he] bor[ne] the burden of proof as to this charge, the finding would have been sustained . . . against [him]"—and as the City observes, that finding, in conjunction with the sustained finding that Fukuda engaged in a prohibited roadblock, may have supported the city council's termination decision. Accordingly, and in view of the trial court's misallocation of the burden of proof, and the administrative findings of dishonesty on the part of Fukuda, it would be inappropriate at this point to affirm the trial court's judgment barring termination of Fukuda's employment.

At the same time, however, we also reject the City's suggestion that we may reverse the judgment and reinstate the city council's decision to terminate Fukuda's employment, on the ground that the evidence amply supports

[17]We observe that the Legislature has been free for the past two decades to specify, consistently with *Tex-Cal, supra,* 24 Cal.3d 335, 346, that certain administrative determinations need to be subjected only to substantial evidence review rather than independent judgment review. During that period, the Legislature selectively has acted to so specify with regard to some agency decisions (see Asimow, *The Scope of Judicial Review of Decisions of California Administrative Agencies, supra,* 42 UCLA L.Rev. 1157, 1176, fn. 62), but expressly has mandated independent judgment review with regard to other agency determinations, including those concerning dismissal of public school teachers. (*Ibid.*; Ed. Code, §§ 44945, 87682.)

the administrative findings. On the record before us, we cannot foreclose the possibility that the trial court, after exercising its independent judgment as described above, reasonably could conclude that the city council's termination decision was an abuse of discretion. (See *Magit* v. *Board of Medical Examiners* (1961) 57 Cal.2d 74, 87 [17 Cal.Rptr. 488, 366 P.2d 816].)

We reverse the judgment of the Court of Appeal and direct that court to remand the matter to the trial court for further proceedings consistent with this opinion.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.