Filed 7/28/23  Alford v. County of Los Angeles CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JAY ALFORD, | B317180 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. VS028361) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Olivia Rosales, Judge.  Affirmed.

Jay Alford, in pro. per., for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz & Su and Avi Burkwitz for Defendant and Respondent.

_____

## SUMMARY

Plaintiff Jay Alford filed a grievance after the Los Angeles County Department of Children and Family Services (county or department) placed his name on the Child Abuse Central Index. After a grievance hearing, the county decided no modification should be made to the previously substantiated allegations of child abuse by plaintiff, resulting in his name remaining on the Child Abuse Central Index.

Plaintiff filed a petition for writ of mandate under Code of Civil Procedure section 1094.5, seeking to overturn the decision to keep his name on the Child Abuse Central Index. The trial court initially granted summary judgment for the county on the ground the petition was barred by the statute of limitations. We found the statute of limitations did not bar the petition and reversed the judgment. (*Alford v. County of Los Angeles* (2020) 51 Cal.App.5th 742.) When the case returned to the trial court, the court again denied plaintiff's petition.

We affirm the judgment.

## FACTS

Plaintiff and his former wife, who have an acrimonious relationship, shared custody of their 15-year-old son, J.A., who lived with plaintiff most of the time.

On March 18, 2014, J.A. called his mother, asking her to pick him up immediately because of plaintiff's physical abuse the previous day. J.A. and his mother went to the Norwalk station of the county sheriff's department. J.A. reported that plaintiff had gotten upset because J.A. had failed a test. J.A. told the deputy that plaintiff blindfolded him, punched him, kicked him and choked him. He said he fell to the floor and pleaded with plaintiff, "Just don't kill me Dad." When plaintiff left the residence on March 18, J.A. took the opportunity to flee and call his mother. The incident report states the reporting officer

2

(Deputy Redondo) observed bruising on J.A.'s chest, upper back and forearms, and the officer photographed the injuries.

Officers went to plaintiff's home, but he was not there. Plaintiff was arrested and booked when he went to the Norwalk station a few hours later to report his son was missing. Plaintiff refused to make any statements regarding his son.

On March 24, 2014, the department received a report on the incident from Deputy Redondo, alleging general neglect and physical abuse of J.A. by plaintiff.

J.A. sought a temporary restraining order, and the court held a hearing on April 11, 2014. J.A.'s mother had also requested orders in the parents' dissolution action, with a hearing scheduled for June 13, 2014. At the April 11 hearing, the court found the issues to be primarily about visitation and custody, and on its own motion reset the June 13 hearing for April 29, 2014. The court granted plaintiff visitation on the weekend of April 18, ordering no physical discipline of J.A. Mother did not comply with the order. A safety plan the department finalized that same day (April 11) provided J.A. was to live with his mother and have no contact with plaintiff until the department's investigation was completed.

On April 30, 2014, J.A. signed a declaration describing the physical abuse and the related circumstances. His adult sister wrote an undated letter to support a permanent restraining order for J.A. against plaintiff, stating she too had experienced physical abuse inflicted by plaintiff.

On May 21, 2014, after a hearing, the superior court issued a restraining order preventing plaintiff from contacting J.A. and requiring him to stay at least 100 yards away from J.A. for the next two years.

Meanwhile, on March 28, 2014, child social worker (CSW) Callistus Amajoyi began an investigation for the department.

Among other things, he interviewed plaintiff (who stated J.A.'s mother was fabricating the allegations to get custody); mother; and J.A.'s adult sister (who told him plaintiff had anger problems and physically abused her for years until she moved in with her mother). On May 21, 2014, the department concluded the allegations of general neglect, physical abuse and emotional abuse were substantiated.

Plaintiff does not dispute that his son went to the police station and made the statements to the police. Plaintiff also does not dispute that "[J.A.] had some scratches on him." His position is that J.A. lied to the police "because of the mother" and lied to the social worker.

The district attorney did not file criminal charges against plaintiff. The record does not reflect when that decision was made.

On June 19, 2014, plaintiff requested a grievance hearing, seeking review of the submission of his name to the Child Abuse Central Index, contending the alleged abuse did not occur.

On July 3, 2014, the department told plaintiff his request could not be processed because the matter "is being adjudicated in Criminal Court," but if the matter were dismissed by the court, plaintiff could then request a hearing. (A hearing "shall be denied when a court of competent jurisdiction has determined that suspected child abuse or neglect has occurred, or when the allegation of child abuse or neglect resulting in the referral to the [Child Abuse Central Index] is pending before the court." (Pen. Code, § 11169, subd. (e).))

Several months later, on November 13, 2014, plaintiff raised the department's denial of a hearing again in a phone conversation with Michael Watrobski, the author of the July 3, 2014 denial letter. This was followed by correspondence in December 2014 between plaintiff and various supervisory

4

personnel. The department told plaintiff that he should provide proof that the criminal charges were dropped, not filed or dismissed, upon receipt of which a grievance hearing would be held. Finally, in January 2015, the department secured information that the district attorney would not be filing a criminal charge.

The grievance hearing occurred on August 25, 2015. Numerous exhibits offered by the parties were entered into evidence without objection, including Mr. Amajoyi's investigative narrative; the sheriff's incident report; affidavits from J.A., his mother and plaintiff; the restraining order; and other documents offered by plaintiff, all listed in the grievance officer's decision.

Mr. Amajoyi, the social worker who conducted the investigation and prepared the investigative report, did not appear at the hearing. (The Child Abuse Central Index grievance procedures in the record state that "[t]he county employee(s) who conducted the investigation that is the subject of the grievance hearing shall be present at the hearing if that person is employed by the county and is available to participate in the grievance hearing." Instead, supervising CSW Veronica Jimenez testified about Mr. Amajoyi's report. The record does not reflect why Mr. Amajoyi was unavailable. (Plaintiff asserts his unavailability "was the action of the Department when they terminated his employment."))

At the hearing, plaintiff complained about his inability to question Mr. Amajoyi about inconsistencies in his report. These inconsistencies included statements about whether Mr. Amajoyi's visits to J.A.'s mother's home were announced or unannounced; plaintiff's assertion that Mr. Amajoyi stated he came to plaintiff's home, while plaintiff said he did not; Mr. Amajoyi's statement that J.A.'s mother gave him a copy of a restraining order filed in court on March 19, 2014 (when no order had yet been issued),

5

and the like.  The grievance officer told plaintiff that both she and the witness (Veronica Jimenez) agreed, "there are inconsistencies.  We cannot say that what happened happened because he's [Mr. Amajoyi's] not here.  We're gonna give you all of that, absolutely."

On October 2, 2015, the grievance review officer issued her decision, recommending "that there be no modification of the original substantiated allegations of physical and emotional abuse."  The director of the department adopted the decision on October 9, 2015.

On February 17, 2016, plaintiff filed a petition for writ of administrative mandamus to compel the county to set aside its decision.  As explained at the outset, after we held that the statute of limitations did not bar the claim, the trial court denied plaintiff's petition on the merits.

Judgment was entered denying plaintiff's petition on October 21, 2021.  Plaintiff filed a timely appeal.

## DISCUSSION

### 1.    The Legal Principles

In a case involving the validity of an administrative decision, "[t]he inquiry . . . shall extend to the questions whether the [county] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.  Abuse of discretion is established if the [county] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."  (Code Civ. Proc., § 1094.5, subd. (b).)  "Where it is claimed that the findings are not supported by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court

6

determines that the findings are not supported by the weight of the evidence. . . ." (*Id.,* subd. (c).)

The parties do not dispute that in its review of the county's findings, the trial court was required to exercise its independent judgment on the evidence. In doing so, the trial court "must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.) We review the trial court's determination using the substantial evidence test. (*Id.* at p. 824.)

## 2. **This Case**

Plaintiff offers several arguments on appeal from the judgment denying his petition. None has merit.

### a. **The "excess of jurisdiction" claim**

Plaintiff's first contention is that the county acted in excess of jurisdiction because it did not provide a grievance hearing within 60 days of his initial request on June 19, 2014, as provided under the county's policies. We disagree.

As we have already observed, a hearing must be denied if an allegation of child abuse is pending before a court. (Pen. Code, § 11169, subd. (e).) The question whether a criminal case was pending was not resolved until January 2015. Moreover, even if that delay were the county's responsibility, plaintiff did in fact receive a grievance hearing on August 25, 2015. (Plaintiff waived the time limits for that hearing.) And, as the trial court stated, plaintiff has not identified any prejudice to him resulting from the failure to hold the grievance hearing earlier.

7

Plaintiff also contends the denial of his initial request for a hearing deprived him of a fair trial, causing his "inability to cross[-]examine and rebut the evidence." For the reasons just discussed (and further discussed, *post*), this claim fails as well.

### b. The bias claim

Plaintiff next contends the grievance officer was biased because her "boss" was Mr. Watrobski, who denied plaintiff's June 19, 2014 request for a grievance hearing. (When plaintiff questioned the grievance officer about the denial of his initial request for a hearing, the officer stated, "I'm thinking my boss probably looked at this, saw there was something pending, and asked you to provide some kind of evidence that said it wasn't pending.") The trial court found "there has been no sufficient argument or evidence presented to indicate that [the grievance officer] was biased again [plaintiff] in any way." Our review of the record confirms that assessment.

### c. The claim of denial of a fair trial

Plaintiff contends he was denied a fair trial because he could not confront and cross-examine the social worker, Mr. Amajoyi, about the discrepancies in his investigative report. The trial court agreed there were "many unexplained discrepancies and inconsistencies contained throughout the investigative record," but found those inconsistencies "do not warrant a reversal of the County's decision. The weight of the evidence supports the conclusion that [plaintiff] committed the actions addressed in [Penal Code provisions on child abuse and corporal punishment] against [J.A.]. Importantly, [J.A.] made multiple separate statements to different people stating that he was physically and emotionally abused by [plaintiff]." The court also cited the letter from plaintiff's adult daughter (in connection

with the restraining order) "corroborating [J.A.'s] depiction of physical and emotional abuse in [plaintiff's] home."

The trial court also pointed out, as to the fair trial issue, that at the grievance hearing, all of plaintiff's evidentiary documents were considered; plaintiff testified; and he proffered testimony from his sister, his longtime roommate, and his fiancée. The trial court further found that Mr. Amajoyi's investigative narrative was entered into evidence at the grievance hearing without objection, so that the county's decision relied on admissible evidence notwithstanding Mr. Amajoyi's inability to appear.

We agree with the trial court's conclusion plaintiff received a fair trial despite his inability to cross-examine Mr. Amajoyi about the discrepancies in his report. The discrepancies or inconsistencies are not relevant to the point at issue: whether plaintiff committed the abuse that J.A. reported to his mother, to Mr. Amajoyi, to another social worker in Riverside County, and to Deputy Redondo. Plaintiff contends J.A. is lying, but he offers no explanation for the bruises observed and photographed by the deputy at the sheriff's station. As the grievance officer stated, "When asked how [J.A.] could have suffered those injuries, [plaintiff] stated that he did not know."

Plaintiff challenges the trial court's statement that there was no showing the grievance officer refused to admit any of plaintiff's documents into evidence. He claims he did make a showing, and that 10 pages of one of his exhibits is not in the administrative record. Plaintiff does not identify the contents of those pages or make any argument about their relevance, so this claim fails.

In a related argument, plaintiff contends Mr. Amajoyi's report should not have been admitted in evidence because it is hearsay and, without cross-examination, was inherently unreliable. As stated earlier, plaintiff made no objection to admission of the report at the hearing. (See *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 302 ["hearsay evidence is not per se inadmissible in administrative proceedings (see, e.g., Gov. Code, § 11513, subd. (d)), and [the plaintiff] waived any objection to its use of such evidence by failing to object"]; Gov. Code, § 11513, subd. (c) ["The hearing need not be conducted according to technical rules relating to evidence and witnesses, except as hereinafter provided. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions."]; *id.*, subd. (d) ["Hearsay evidence may be used for the purpose of supplementing or explaining other evidence but over timely objection shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions."].)

Plaintiff contends he objected to the report at the hearing and before the hearing. His citations to the record for the claim he objected before the hearing do not in any way support his claim. He claims to have objected by virtue of his assertions at the hearing that no one could answer his questions about the discrepancies in the report. That does not suffice as an objection to admission of the report.

Further, the Amajoyi report was not the only evidence presented. Other evidence to which plaintiff did not object

10

included the police report, the two-year permanent restraining order, and J.A.'s affidavit describing the abuse. And, as already discussed, plaintiff identified no discrepancies in the Amajoyi report that are relevant to the fundamental issue, and so has shown no prejudice.

### d.    The weight of the evidence

Plaintiff argues the grievance officer's findings were not supported by the weight of the evidence. The trial court concluded otherwise: "Notwithstanding [plaintiff's] arguments to the contrary, the Court finds that the Grievance Officer's Decision is supported by substantiated evidence of [plaintiff's] willful physical and emotional abuse. Specifically, [J.A.] disclosed specific acts of physical and emotional abuse by [plaintiff]; [the county] submitted documentary evidence of [J.A.'s] injuries to his torso, which were consistent with [J.A.'s] depiction of the injuries; and [plaintiff's] minor son and adult daughter both disclosed that they had been victims of ongoing physical and emotional abuse at the hands of [plaintiff]." To this, plaintiff repeatedly claims only that the court "does not construe the information correctly." The record, however, supports the trial court's findings.

Plaintiff then contends the trial court did not have all the necessary evidence, and erred when it denied his request in March 2021 to augment the administrative record. We find no error.

In cases where the court exercises its independent judgment on the evidence, the court may admit evidence at the hearing on the writ, "[w]here the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at

the hearing before [the county]." (Code Civ. Proc., § 1094.5, subd. (e).)

Plaintiff asked to augment the record with 40 additional exhibits, including the audio recording and transcript of the grievance hearing. The trial court granted the request as to the audio recording and transcript, and denied it as to the other documents. (The transcript was already in the administrative record; the court later gave plaintiff leave to file a transcript of the audio recording on pleading paper.) As to the other documents, the court stated plaintiff "failed to show that the evidence could not have been produced in the exercise of reasonable diligence, or that it was <u>improperly</u> excluded at the administrative hearing."

On appeal, plaintiff identifies as evidence he could not have produced at the hearing only "the follow up question asked by Grievance Review Officer after the grievance hearing," in the form of e-mails between plaintiff and the grievance officer. He does not tell us how these communications are relevant, or how their omission from the administrative record is in any way prejudicial to him.

In short, substantial evidence supports the trial court's conclusion that the weight of the evidence showed plaintiff engaged in acts of physical and emotional abuse against J.A.

## DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal.

GRIMES, J.

WE CONCUR:

STRATTON, P. J.          WILEY, J.

12