Filed 2/25/14  Al-Awadi v. Housing Authorityfor the County of San Diego CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| HYDAR AL-AWADI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HOUSING AUTHORITY FOR THE COUNTY OF SAN DIEGO,<br><br>    Defendant and Respondent. | D062320<br><br><br><br>(Super. Ct. No. 37-2011-00070415-CU-WM-EC) |


APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Joshua M. Searcy for Plaintiff and Appellant.

Thomas E. Montgomery, County Counsel, and James R. O'Day, Senior Deputy County Counsel, for Defendant and Respondent.

Plaintiff Hydar Al-Awadi appeals a judgment entered after the trial court denied his petition for writ of mandate challenging the decision of defendant Housing Authority for the County of San Diego (HACSD) to terminate his benefits under "Section 8" of the United States Housing Act of 1937.  (42 U.S.C. § 1437f.)  Al-Awadi contends he has a qualifying disability under the Fair Housing Act and American with Disabilities Act.  He

further contends that he requested an accommodation for his disability and HACSD failed to provide him with a reasonable accommodation. We reject his contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*A. Section 8 Rental Assistance Program*

In April 2007, Al-Awadi applied to HACSD, a public housing entity responsible for administering low income rental assistance, commonly referred to as Section 8 housing. Section 8 housing is a federally funded and locally administered program that provides rent subsidies to low income families, veterans, the elderly, and the disabled. Eligibility is determined by the family's annual gross income.

To apply for Section 8 housing, individuals are required to submit a rental application to their local public housing agency. Pursuant to HACSD's application process, Al-Awadi completed a form titled "Personal Declaration and Questionnaire for Rental Assistance," which is comprised of questions relating to family composition, income, assets, and employment history. In the section titled "Reasonable Accommodation" Al-Awadi checked a box stating he needed an accommodation, indicating that he needed someone to assist him with the form. Al-Awadi asked his friend Lois Hawkes to help him complete the application. Subsequently, HACSD granted Al-Awadi Section 8 housing assistance.

HACSD reviews all participants annually to determine continued program eligibility and the appropriate amount of assistance. As part of the recertification process, Al-Awadi completed an "Annual Recertification for Rental Assistance" form in

2

December 2008, January 2010, and December 2010, indicating he was disabled on each form. However, on all recertification applications he stated that he did not "have a disability that needs specific assistance to fully utilize [HACSD's] services." The application directed all persons who needed assistance to contact a housing specialist. A housing specialist is a designated person who manages rental assistance contracts and advises tenants of their program rights.

On numerous occasions HACSD informed Al-Awadi of his responsibilities and the program rules. For example, in February 2008, Al-Awadi signed a housing voucher, which stated that participants must report changes in income and promptly notify the Housing Authority in writing when the family is away from the unit for an extended period of time. He also received the family handbook, a guide for Section 8 housing participants, which directs individuals to report all changes in employment, income, and assets, including insurance settlements. In February and December 2008, Al-Awadi signed "Important Points to Remember" forms, which state grounds for rental assistance termination occurs when a "member fails to report, **in writing, within 14 days"** any changes in household income, sources of income, household assets, and/or absence of any family member from the unit. And, in January 2010 and December 2010, Al-Awadi signed "Statement of Responsibilities - Section 8 Voucher Program" forms, which reiterated his responsibility to report changes in income and assets, and specifically stated "[u]napproved absences lasting longer than one month may be subject to termination of rental assistance benefits."

## B. *Investigation*

On March 15, 2011, HACSD received an anonymous complaint that Al-Awadi was making thousands of dollars working for a company, had received a substantial insurance settlement from a car accident, and had been going to Iraq and staying for months at a time.

HACSD's investigation revealed that Al-Awadi failed to report his employment and income changes in writing. Specifically, on his December 2010 recertification booklet, Al-Awadi listed earnings of $850 per week. However, based on his paystubs, Al-Awadi earned from $650 to $1,033 per week. He also failed to report that in a two week period in August 2010, he made $1,597.29. In addition, Al-Awadi received an insurance settlement of $46,820.26, which he did not report as an asset. Finally, on two separate occasions, Al-Awadi spent over 30 days in Iraq but failed to contact his housing specialist to request approval for his extended absences

Based on the investigation, HACSD sent Al-Awadi a letter on March 28, 2011, informing him HACSD intended to terminate Al-Awadi's membership in the Section 8 rental assistance program.

## C. *Administrative Hearing*

An administrative hearing took place on June 30, 2011. Al-Awadi testified that because he was "disabled with memory" he requested assistance in completing the initial personal declaration and questionnaire for rental assistance. He also testified that he did not report his employment and income changes because the 14-day reporting requirement was never made clear to him. Further, Al-Awadi stated his attorney told him he did not

have to report the $46,820.26 insurance settlement claim. Finally, he did not inform HACSD about his two 30-day trips to Iraq because his father was ill and he was upset and not thinking clearly.

Additionally, Hawkes testified on behalf of Al-Awadi. She stated that she helped Al-Awadi fill out his Section 8 housing application. Hawkes acknowledged that she was previously Al-Awadi's payee for the money he received from the Social Security Administration (SSA).[1] However, in March 2011, Al-Awadi terminated Hawkes' role as payee when he submitted a request to the SSA stating he could manage his own funds. The SSA referred to Al-Awadi's psychiatrist who stated he thought Al-Awadi could handle his own money

On July 12, 2011, the decision after hearing to terminate Al-Awadi's housing assistance based on his various program violations was upheld.

### D. Petition for Writ of Mandate

On October 7, 2011, Al-Awadi filed a petition for writ of mandate challenging the decision to terminate his Section 8 housing assistance. On May 11, 2012, the trial court denied Al-Awadi's petition for writ of mandate. Judgment was entered on June 5, 2012.

## DISCUSSION

## I

### STANDARD OF REVIEW

The trial court reviewed HACSD's decision to terminate Al-Awadi's housing benefits for abuse of discretion. (Code Civ. Proc., § 1094.5.) When reviewing the trial

---

[1] A payee is a person appointed by the SSA to assist a beneficiary who is incapable of managing or directing his or her social security benefits.

court's decision on such an administrative order, we apply the substantial evidence test. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824.)  Where the trial court's findings are supported by the weight of the evidence, its decision must stand.  (Code Civ. Proc., § 1094.5; *Strumsky v. San Diego County Employee Retirement Assn.* (1974) 11 Cal.3d 28, 44.)

II

*QUALIFYING DISABILITY*

Al-Awadi contends he has a qualifying disability related to his memory, which impaired his ability to comply with the program requirements.  He further contends his receipt of supplemental security income (SSI) is sufficient evidence to demonstrate he satisfies the definition of disability under the Fair Housing Act and the Americans with Disabilities Act.  We disagree.

The Fair Housing Act and Americans with Disabilities Act make it illegal to discriminate against people with disabilities.  Both acts define a person with a disability to include (1) individuals with a physical or mental impairment that substantially limits one or more major life activities; (2) individuals who are regarded as having such an impairment; and (3) individuals with a record of such an impairment.[2]  (42 U.S.C. § 3602(h); 42 U.S.C. § 12102(1).)

The record in the present case is devoid of any evidence of a mental impairment or disability.  At the administrative hearing, Al-Awadi testified as to his mental disability, stating that he is "disabled with memory. . . disabled to remember

---

[2]    The FHA uses the term "handicap" instead of the term "disability."  However, both terms have the same legal meaning.  (*Bragdon v. Abbott* (1998) 524 U.S. 624, 646.)

6

stuff." While memory loss may qualify as a mental impairment, Al-Awadi did not provide "a record of having such an impairment." (42 U.S.C. § 3602(h); 42 U.S.C. § 12102(1)(B).) Al-Awadi argues "the receipt of SSI funds alone should be sufficient evidence that [he] is disabled within the meaning of the relevant statutes." However, the Supreme Court has rejected the idea that receipt of social security benefits creates a presumption about disability status under the Americans with Disabilities Act, a statute with a definition of disability identical to the Fair Housing Act's. (*Cleveland v. Policy Mgmt. Systems* (1999) 526 U.S. 795, 802.)

Al-Awadi relies on *Douglas v. Kriegsfeld Corp.* (D.C. 2005) 884 A.2d 1109, to support his claim that he has a qualifying disability. *Douglas* is not binding authority on this court and in any event, is distinguishable from the present case. In *Douglas*, the court held the tenant's witnesses who testified, coupled with it being readily apparent to " 'all of us' " that the tenant had " 'some mental illness,' " as exhibited from her mood swings and alcohol abuse, provided sufficient evidence to find the tenant suffered from a mental impairment. (*Id.* at p. 1133.) By contrast, the record in the present case does not provide any evidence as to Al-Awadi's mental impairment, other than his own testimony and SSI benefits. During Hawkes' testimony, she did not testify about Al-Awadi's alleged mental illness, as did the witnesses in *Douglas*.

For a short period of time, Hawkes was appointed as Al-Awadi's payee. In support of his argument that he is mentally disabled, Al-Awadi states that "no alternative explanation for the appointment of a payee for Petitioner appears on the record." However, at the administrative hearing, Hawkes testified that she stopped being Al-

7

Awadi's payee in March 2011 because both Al-Awadi and the SSA believed he could manage his funds without the assistance of Hawkes. Thus, the trial court properly found Al-Awadi had failed to show he had a qualifying disability.

## III

### *REASONABLE ACCOMMODATION*

Al-Awadi next argues his indication of a disability and the need for accommodation on his initial rental application were sufficient to obligate HACSD to open a dialogue with him regarding the requested accommodation. He further argues HACSD failed to accommodate his disability. We disagree.

To establish a right to accommodation, Al-Awadi must establish that (1) he had a disability; (2) HACSD knew or should have known of the disability; (3) the accommodation is necessary to afford equal opportunity for him under the program; (4) the accommodation is reasonable; and (5) HACSD failed to make the requested accommodation. (See 42 U.S.C. § 3604.) The determination of what is a reasonable accommodation depends on the facts of the particular case and requires a balancing of the needs of the parties involved. (*City of Edmonds v. Washington State Bldg. Code Council* (9th Cir. 1994) 18 F.3d 802, 806.)

Because Al-Awadi did not meet his burden in showing that he suffered from a disability, there was no need for HACSD to provide him accommodation. However, even if we could determine Al-Awadi had a disability, which he did not, his argument still fails because there was no showing of a failure to accommodate. Al-Awadi requested a single accommodation on his initial application for rental assistance, which

8

was "someone assisting w/form." However, Al-Awadi subsequently asked his friend Hawkes for help in completing the initial Section 8 housing application. Further, both Al-Awadi and Hawkes testified that the only person Al-Awadi trusted to assist him with the program forms was Hawkes.

After being granted Section 8 housing, Al-Awadi was required to annually recertify his eligibility for rental assistance. On all subsequent recertification forms, under the reasonable accommodation section, Al-Awadi stated that he did not "have a disability that needs specific assistance to fully utilize [HACSD's] services." This section directed all persons who needed assistance to contact their housing specialist. There is no evidence in the record indicating Al-Awadi contacted a housing specialist for assistance in completing the recertification forms. While Al-Awadi indicated he was disabled on his rental application and recertification forms, this alone did not put HACSD on notice that he needed accommodation. (Cf. *Taylor v. Principal Fin. Group, Inc.* (5th Cir. 1996) 93 F.3d 155, 165 [employee did not give sufficient notice to trigger employer's duty to engage in an interactive process and provide accommodation by indicating he suffered from a bipolar and anxiety disorder, but where he failed to request accommodation for that disorder].) To trigger the FHA requirements, a landlord must know of both the disability and the tenant's desire for an accommodation for that disability. (*Ibid.*) Here, Al-Awadi needed to communicate to HACSD the need for an accommodation because of his memory disability, rather than merely indicating he was disabled.

The cases Al-Awadi cites for the proposition that landlords and employers are required to open a dialogue when accommodation has been requested are not applicable

9

here. HACSD could not be expected to open a dialogue with Al-Awadi when he requested a single accommodation to fill out his initial application and subsequently had a friend assist him with that application. Nor could HACSD reasonably be aware Al-Awadi needed assistance with the forms when he failed to indicate the need for an accommodation on any subsequent recertification application. Further, it is telling that Al-Awadi did not claim to have a disability that required an accommodation until he was notified that HACSD intended to terminate his Section 8 housing benefits.

Because Al-Awadi has not demonstrated he has a qualifying disability that requires an accommodation, the trial court correctly concluded he did not meet his burden in proving an abuse of discretion.

DISPOSITION

The judgment is affirmed. Each party shall bear their own costs.

HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.