Filed 3/27/25  Birch v. City of Oxnard CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| DAVID BIRCH, <br><br>   Plaintiff and Respondent, <br><br> v. <br><br> CITY OF OXNARD, <br><br>   Defendant and Appellant. | 2d Civ. No. B330225 <br> (Super. Ct. No. 56-2020-00542105-CU-WM-VTA) <br> (Ventura County) |

Appellant the City of Oxnard (the City) terminated David Birch's employment.  Birch appealed to an advisory arbitrator pursuant to the City's Memorandum of Understanding (MOU), and the City affirmed Birch's termination after arbitration.  Birch successfully petitioned the trial court for a writ of mandate (Code Civ. Proc.,[1] § 1094.5).

The City appeals from the order granting Birch's petition for a writ of mandate.  The City contends the trial court applied the incorrect standard of review, the court's findings are not

---

[1] Further unspecified statutory references are to the Code of Civil Procedure.

supported by substantial evidence, Birch's conduct violated various personnel rules, and the court erroneously substituted its own penalty. We affirm in part, and reverse in part.

FACTS AND PROCEDURAL HISTORY

Birch was employed by the City for 33 years. In 2007, he became the chief water operator in the water division and remained there until he was terminated in 2019. In this role, he supervised five to seven employees. He was also an interim water operations manager between 2010 and 2015 and supervised about 40 employees.

<em>Birch's termination</em>

In 2018, one of Birch's subordinates lodged a complaint, alleging that Birch engaged in inappropriate conduct. The City hired an investigator from an outside law firm who interviewed Birch and several employees. In his report, the investigator included summaries of the interviews and an analysis of each witness's credibility. He made various findings regarding instances of misconduct. The City served Birch with a notice of intent to terminate.

The City charged Birch with seven alleged violations of the City's personnel rules and regulations based on the following incidents: (1) Birch held a supervisory position within the Water Department. On multiple occasions, he told coworkers a story about finding employee Laura Camacho's underwear left out in the restroom. He also told a story about encountering a male employee "Tino," who had his pants around his ankles when he used the urinal in the bathroom; (2) Birch made inappropriate sexual remarks or comments towards his coworkers. On one occasion, he made a comment about wanting to get a car ride with one employee, Mike Love, because he "gives better

2

blowjobs." Birch also regularly made inappropriate gay comments and jokes, including frequent references to employees looking at gay porn. On another occasion he made a comment regarding the "Man/Boy Love Association" or "MBLA"; (3) Birch engaged in horseplay with an employee including instances where he came up behind the employee and squeezed his nipples; (4) Birch made inappropriate sexual remarks and comments about or in front of third-party vendors; (5) Birch made an inappropriate sexual remark suggesting that one employee, Richard Osuna, should visit Love's office to get a "blowjob" since there were no cameras in that employee's office; (6) Birch made an inappropriate comment in front of a coworker regarding the contents inside Birch's colostomy bag; and (7) Birch was evasive and dishonest, denying all allegations when he was interviewed by the investigator.

The City "reviewed the Investigation Report that determined [Birch was] in violation of the Personnel Rules and Regulations" listed in the notice. The City decided to terminate Birch based on a "preponderance of the evidence show[ing] that [Birch] violated City policies."

Birch was granted a *Skelly*[2] hearing. After the hearing, the City issued a notice of imposition of termination, citing the same rule violations based on the same seven incidents. The City found Birch "consistently engaged in inappropriate and offensive behavior over a prolonged period of time." The City noted that a "thorough, independent investigation" supported the allegations of misconduct.

---

[2] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194. A *Skelly* hearing gives the employee notice and opportunity to respond to proposed disciplinary actions before they are imposed.

Birch appealed the termination to an arbitrator pursuant to the City's MOU. During the two-day arbitration, Birch, several employees, human resources personnel, and the public works director testified. After the hearing, the arbitrator issued an advisory decision, concluding: "Birch violated various sections of Chapters 12 and 18 of the City's Personnel Rules and Regulations. As such, the City was entitled to discipline Birch and to choose any level of discipline, including termination." The arbitrator found that the bathroom incidents regarding Camacho and Tino occurred but were "remote in time." The sexual jokes were "ongoing and pervasive but did not cause any of the other employees to complain." In weighing various considerations, the arbitrator said that his "first impulse would be to impose a combination of suspension and demotion discipline" and require Birch to "receive annual sexual harassment training and be put on one year of probation." But the City "clearly had the authority under the City's Rules and Policies and the MOU to terminate Birch." The city manager considered the arbitrator's opinion and upheld the termination.

*Petition for writ of mandate and the October 20, 2022, order*

Birch petitioned the superior court for a writ of mandate pursuant to section 1094.5. After the hearing, the trial court commented words to the effect of, " 'the punishment is too harsh.' " The City asked to be heard on that issue, and the court stated, " 'no.' " In a minute order, the court granted Birch's petition. The court found that only the first two of the City's seven factual findings or "incidents" were supported by the evidence. With respect to the first finding, the court found that Birch mentioned the incidents regarding Camacho and Tino "at least into 2018." With respect to the second finding, the court

4

found that Birch made "gay jokes" in the workplace with male coworkers, and approximately nine years prior he made several references to the Man/Boy Love Association.

The court found the "evidence did not support Incident numbers 3, 4, 5, 6 or 7." But it found incidents 1 and 2 violated chapter 18, section 18.1.2, subdivision (2), which states: "Employees shall treat the public and fellow employees with the utmost courtesy and should conduct themselves at all times in a polite, courteous, and professional manner that will reflect credit to themselves and the City." The court did not find incidents 1 and 2 fell under any other charged rule violations. The court remanded to the City to reconsider the level of discipline to be imposed.

*Petition for further writ of mandate and the May 2023 order*

On remand, the City reconsidered the discipline imposed. The City again decided to terminate Birch's employment. The city manager listed several factors he considered, including Birch's supervisory role, his training in sexual harassment policies, the evidence of his misconduct, his denial of his misconduct with the investigator, the arbitrator's findings, his accountability, and recommendations from others to terminate Birch. The city manager mentioned incidents 3 through 7 in explaining his decision to affirm the termination.

Birch filed a "further motion for writ of mandate," seeking to reverse the City's decision. Birch proposed a 60-day suspension without pay in lieu of termination. The trial court granted the writ of mandate. The court found that "after it issued its interlocutory order remanding this matter for reconsideration of discipline based upon the findings made by the Court, that Respondent chose to ignore the Court's findings and

5

reiterated its decision of termination based upon situations and facts and findings that were not substantiated during the administrative hearing.  Such actions constitute[d] a manifest abuse of discretion on the part of Respondent."  The court treated Birch's 60-day suspension request as an amendment to the original petition and ordered the City to reinstate Birch with back pay and benefits except for the 60-day suspension period.

## DISCUSSION

*Appealability of the October 20, 2022, order*

After the respondent's brief was filed, our Supreme Court decided *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643 (*Meinhardt*), which considered the appealability of an order similar to the one here.  Birch concedes, and we agree, the appeal as to the October 20, 2022, order is timely.

An "appeal must be taken 'from a judgment that is not intermediate or nonfinal but is the one final judgment.' [Citations.]"  (*Meinhardt*, *supra*, 16 Cal.5th at p. 652.)  The "time to appeal in administrative mandate proceedings starts to run with the entry of 'judgment' or service of notice of entry of 'judgment,' rather than with the filing of, or service of notice of the filing of, an 'order,' minute order, or other ruling."  (*Id*. at p. 651.)  Here, the October 20, 2022, order was not the final order, as the matter was remanded thereafter to the City for further proceedings.  Even though there was no formal "judgment" in this case, the May 2023 order was the final order that disposed of all issues, and the City appealed from that order.  We thus consider the May 2023 order as "sufficiently final to constitute a judgment."  (*Id*. at p. 658.)

Birch contends the City should be judicially estopped from challenging the October 20, 2022, ruling because it took a

6

contrary position by reconsidering Birch's penalty. But the trial court granted Birch's petition and ordered the City to reconsider the penalty. Judicial estoppel is an extraordinary remedy that should be "applied with caution and limited to egregious circumstances." (*Jogani v. Jogani* (2006) 141 Cal.App.4th 158, 170.) No such egregious circumstances exist here.

*October 20, 2022, order*

*1. Application of the correct standard of review*

The City contends the October 20, 2022, order must be vacated because the trial court did not apply the appropriate standard of review. We conclude otherwise.

Where, as is here, the agency's action substantially affects a fundamental vested right, the trial court was required to exercise its independent judgment of the evidence before the City. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817-818 (*Fukuda*); *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44.) In "exercising its independent judgment, a trial court must afford a strong presumption of correctness concerning the administrative findings, and the party challenging the administrative decision bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda*, at p. 817.) Independent judgment review " 'does not mean that the preliminary work performed by the administrative board in sifting the evidence and in making its findings is wasted effort . . . . [I]n weighing the evidence the courts can and should be assisted by the findings of the board.' [Citation]." (*Id*. at p. 812.)

The strong presumption of correctness, however, "is not the same as a substantial evidence review and does not relieve the trial court of its obligation to make its own findings." (*San Diego*

7

*Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1141 (*San Diego Unified*).) "[T]he presumption provides the trial court with a starting point for review—but it is only a presumption, and may be overcome. Because the trial court ultimately must exercise its own independent judgment, that court is free to substitute its own findings after first giving due respect to the agency's findings." (*Fukuda, supra*, 20 Cal.4th at p. 818.)

Here, the trial court acknowledged the "proper standard of review would be independent judgment." But it did not state it would afford a "strong presumption of correctness" to the administrative findings or that Birch had the burden to prove the administrative findings were contrary to the weight of evidence. (*Fukuda, supra*, 20 Cal.4th at p. 817.)

The failure to articulate *Fukuda*'s "strong presumption of correctness" and allocation of the burden of proof is troubling, but we are "constrained by the presumption, also acknowledged in *Fukuda*, that '[a] judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' [Citations.]" (*Seibert v. City of San Jose* (2016) 247 Cal.App.4th 1027, 1043.) Thus, we must decide whether the court's omission in referencing the "strong presumption of correctness" of the City's findings and Birch's burden of proof in the court's minute order is an affirmative demonstration of error. We conclude that it is not.

Here, there is no statement of decision or other written decision which explained the court's reasoning for its findings. The court asked no questions during the parties' arguments, and at the conclusion of argument, the court stated " 'the punishment

8

is too harsh.' "  The court's minute order also does not assist us. The order only shows the court ruled on the admissibility of some exhibits.  It admitted exhibit 5, the investigation report, and noted it was "of minimal value as it represents a 'summary' of interviews and the opinions of an attorney whose credentials were never established.  The report is hearsay."

Aside from the reference to exhibit 5, there is no other indication on how the court weighed the evidence.  The court concluded the evidence only supported the City's findings as to incidents 1 and 2, but not incidents 3 through 7.  The record is silent as to whether the court gave the City's findings a "strong presumption of correctness" or that it found Birch proved the City's findings were contrary to the weight of the evidence. Without an affirmative demonstration of error, we " 'must conclusively presume that the trial court performed its duty, gave full weight to the presumption of validity of the [City's] findings, but nevertheless found against the [City].' " (*Fukuda*, *supra*, 20 Cal.4th at p. 812, italics omitted.)

   *2.  Trial court's factual findings of incidents 3 through 7*

Next, the City contends the trial court erred by disregarding some of the City's evidence and that substantial evidence does not support the trial court's findings on incidents 3 through 7.  We are not persuaded.

Our task on appeal is to " 'review the record and determine whether the *trial court's* findings (not the administrative agency findings) are supported by substantial evidence.' [Citation.]" (*San Diego Unified*, *supra*, 214 Cal.App.4th at p. 1145.)  The City's burden on appeal is a heavy one because we must resolve evidentiary conflicts in favor of the prevailing party and draw reasonable inferences in favor of the judgment.  (*Id*. at pp. 1141-

9

1142.)  " 'Substantial evidence' is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  [Citation.]  It is sufficient ' "if any reasonable trier of fact could have considered it reasonable, credible and of solid value." '  [Citation.]"  (*Id.* at p. 1142.)  Even the testimony of one witness may constitute substantial evidence.  (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 119.)

The City asserts the trial court disregarded the evidence in support of the City's findings on incidents 3 through 7 and compares this case to *Sager v. County of Yuba* (2007) 156 Cal.App.4th 1049.  In *Sager*, the statement of decision showed that the court disregarded the testimonies of police experts because it mistakenly believed that the county's findings could only be supported by a mental health expert's testimony.  (*Id.* at pp. 1054-1055.)  It was also apparent that the court misunderstood the county's doctor's testimony and reports.  (*Id.* at pp. 1055-1057.)  While the trial court was "free to *disagree* with [the doctor's] opinion or *discredit* it" the court did neither.  (*Id.* at p. 1055.)  Instead, the statement of decision reflected that the trial court based its findings on an inaccurate characterization of the doctor's opinion.  (*Id.* at pp. 1055, 1057.)

But unlike *Sager*, here there is no demonstration of affirmative error because the record does not disclose how the trial court considered the evidence.  Moreover, substantial evidence supports the trial court's determination that the evidence did not support incidents 3 through 7.  As to incident number 3, Birch denied he engaged in horseplay or physically touching the employee.  As to incident number 4, Birch did not recall making inappropriate sexual comments to third-party vendors.  When asked if it was possible he made an "off-color,

10

sexual or sexual orientation joke" to a third-party vendor, Birch responded that "I do not do that with vendors" because he does not know them. As to incident number 5, Birch testified he did not recall specifically telling Osuna to go to Love's office for a "blowjob" because there were no cameras. Neither Love nor Osuna testified at the arbitration hearing, and according to the investigator's report, both of them denied or had no knowledge of Birch making such a comment. Some employees testified Birch frequently joked about Love giving "blowjobs" in his office, but not specific testimony that Birch told Osuna to go to Love's office for a "blowjob."

As to incident number 6, Birch did not recall discussing the contents of his colostomy bag, but did recall two employees telling him that his bag was leaking. Another employee testified that other people, but not Birch, made comments or jokes about the contents of the colostomy bag. As to incident number 7, Birch testified he was not trying to deceive the investigator or cover up facts. The arbitrator also found that Birch's " 'I do not remember' " responses "do not rise to the level of a lie," but the investigator could have perceived such responses as being "less than candid." Although the City cites contrary evidence supporting incidents 3 through 7, we do not reweigh evidence and resolve all conflicts in favor of the trial court's ruling. (*San Diego Unified*, *supra*, 214 Cal.App.4th at pp. 1141-1142.)

The City also asserts the trial court refused and "expressly ruled that it did not consider" the investigation report (exhibit 5). The record reflects otherwise. The trial court accepted the investigation report into evidence, but it found it had "minimal value" because it contained a " 'summary' of interviews" and the "opinions of an attorney whose credentials were never

11

established."  It also found the report was hearsay.  In exercising its independent judgment of the facts, the court was entitled to weigh the evidence as having "minimal value."

### 3. *The trial court's findings of violations of the City's rules and regulations*

After finding that only incidents 1 and 2 were supported by evidence, the trial court concluded that the incidents "would fall under" the City's code of conduct policy, chapter 18, section 18.1.2, subdivision (2)—"Employees shall treat the public and fellow employees with the utmost courtesy and should conduct themselves at all times in a polite, courteous, and professional manner that will reflect credit to themselves and the City."

The trial court did not find incidents 1 and 2 violated the six other charged rules and regulations.  The City contends the trial court erred by not finding Birch's conduct was subject to other rules, including chapter 3, sections 3.3 and 3.3.1 (harassment and sexual harassment policy), chapter 12, section 12.1, subdivisions (10) and (15) (discipline policy), and chapter 18, section 18.1.2, subdivision (7) (code of conduct).

We review de novo the interpretation of an agency's personnel rules and regulations.  (*Superior Court v. Public Employment Relations Bd.* (2018) 30 Cal.App.5th 158, 188; *Balakrishnan v. Regents of University of California* (2024) 99 Cal.App.5th 513, 525 (*Balakrishnan*).)  We apply the rules of statutory construction, giving the language its plain, commonsense meaning.  And we accord meaning to every word and phrase in the rule, reading it as a whole so that all of the parts are given effect.  (*Butts v. Board of Trustees of California State University* (2014) 225 Cal.App.4th 825, 835.)

While the City's interpretation of its own rules is owed deference (*Balakrishnan, supra*, 99 Cal.App.5th at p. 525), the City charged Birch with seven violations of its personnel rules without specifying which incident violated which specific rule. Thus, we are unable to determine with certainty whether the City found incidents 1 and 2 violated one, two, or all the charged rules.

Based on our own independent review, we conclude Birch's conduct under incidents 1 and 2 was subject to section 12.1, subdivisions (10) and (15). Section 12.1 provides several different grounds for discipline. Under subdivision (10), employees "may be disciplined for [¶] . . . [¶] . . . [d]iscourteous or disrespectful treatment of the public, other employees, or City officials." And, under subdivision (15), an employee may be disciplined for a "[v]iolation of these Personnel Rules or any other rule, regulation, resolution, ordinance, or policy." There is no dispute that incidents 1 and 2 violated section 18.1.2, subdivision (2), which mandates that employees shall treat fellow employees with the utmost courtesy and shall conduct themselves in a polite, courteous, and professional manner. Birch is therefore subject to discipline under section 12.1.

We also conclude the incidents fall under chapter 18, section 18.1.2, subdivision (7). That section specifies that "[s]erious misconduct" includes "[t]he use of inappropriate, offensive and/or aggressive language or actions," and "[a]ny other unacceptable behavior or conduct that common sense dictates is unprofessional or which may affect and/or reflect negatively on the City." We conclude that the behaviors described in incidents 1 and 2 were inappropriate and unprofessional behavior that constitute "serious misconduct."

But based on the record here, we conclude Birch did not violate the City's harassment/sexual harassment policy under chapter 3, sections 3.3 and 3.3.1. That policy prohibits "harassment on the basis of a protected status." "Protected status" includes gender, gender identity, physical and mental disability, and medical condition. "Sexual harassment includes unwelcome sexual advances, requests for sexual favors, or other visual, verbal, or physical conduct of a sexual nature when . . . [¶] [s]ubmission to such conduct is made . . . a term or condition of an individual's employment; [¶] . . . is used as the basis for employment decisions affecting that individual; or [¶] [s]uch conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive work environment." "Sexually harassing conduct need not be motivated by sexual desire and may include nonsexual conduct motivated by the violator's hostility towards the victim's gender or towards the victim's nonconformity to gender stereotypes."

Based on the plain language of the rule, the harassing behavior must be "on the basis of a protected status." The rule further implies that the conduct must be motivated by the violator's sexual desire or hostility towards a protected status. The examples of sexual harassment in section 3.3.1 further reflect that conduct is considered harassment when the violator treats a person or group disparately because of their protected status.

Although Birch made inappropriate and offensive comments in incidents 1 and 2, the record does not indicate such comments were motivated by hostility towards a fellow employee's protected status, perceived protected status, or

14

because they associated with someone with a protected status. The evidence does not show any employee was singled out or treated disparately because of their protected status.

### 4. Trial court's remand to the City

The City contends that despite only substantiating two of the seven incidents, the trial court erred by remanding to the City to reconsider punishment because the two incidents were sufficient to warrant termination. We disagree. Where, as here, several findings of misconduct have been reversed by the trial court, the case was appropriately remanded to the agency to reconsider the penalty. (*Bonham v. McConnell* (1955) 45 Cal.2d 304, 306 (*Bonham*); see also § 1094.5, subd. (f).)

### May 2023 order

Lastly, the City challenges the May 2023 order, contending the trial court erred in finding the City abused its discretion by reaffirming Birch's termination and erred in imposing a 60-day suspension. Even though the City abused its discretion, we conclude the trial court's modification of the penalty was error.

An agency's decision regarding the appropriate penalty should not be disturbed absent an abuse of discretion. (*Bonham*, *supra*, 45 Cal.2d at p. 306; *Toyota of Visalia, Inc. v. New Motor Vehicle Bd.* (1987) 188 Cal.App.3d 872, 884-885. We review the administrative decision, and not the trial court's decision, for abuse of discretion. (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46 (*Deegan*).

Here, the City abused its discretion when it considered charges 3 through 7 in reimposing the penalty of termination after the trial court found those incidents unsubstantiated. Because our conclusion is limited, we do not opine on the propriety of the City's penalty. The City is free to consider any

15

appropriate penalties, so long as it is based on grounds substantiated by the trial court.

We also conclude the trial court erred in substituting the City's penalty with its own. "Neither the trial court nor the appellate court is entitled to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. [Citation.] The trial court may vacate *but not modify* the agency's determination of penalty if it finds a manifest abuse of discretion." (*Deegan*, *supra*, 72 Cal.App.4th at pp. 45-46, italics added; see also § 1094.5, subd. (f).) The court's modification of penalty was error and must be vacated.

## DISPOSITION

The judgment is reversed as to the trial court's May 2023 order imposing a 60-day suspension and reinstating Birch's employment with back pay and benefits. On remand, the trial court is directed to order the City to reconsider a penalty based only on the evidentiary findings as set forth in the October 20, 2022, order and consistent with this opinion. The trial court is also directed to modify its October 20, 2022, order to include violations of section 12.1, subdivisions (10) and (15), and section 18.1.2, subdivisions (2) and (7). The October 20, 2022, order is otherwise affirmed. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


BALTODANO, J.

We concur:


GILBERT, P. J.                    YEGAN, J.


16

Jeffrey G. Bennett, Judge

Superior Court County of Ventura

_____

Richards, Watson & Gershon, T. Peter Pierce, Steven A. Nguy and Henry M. York for Defendant and Appellant.

DePasquale & Cole and Russell J. Cole for Plaintiff and Respondent.